Filed 10/21/21  P. v. Fox CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B307236 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA039277) |
| v. | |
| JESSE FOX, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Joseph R. Porras, Judge. Reversed.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Petitioner Jesse Fox appeals from an order denying his Penal Code[1] section 1170.95 petition for resentencing. The trial court summarily denied Fox's resentencing petition because Fox pleaded guilty to a felony murder special circumstance. We reverse the order. Although Fox pleaded guilty, the sentencing court struck the felony murder special circumstance allegation in arriving at defendant's sentence. Because the record of conviction does not demonstrate Fox is ineligible for sentencing relief as a matter of law, and Fox's allegations constitute a prima facie showing of entitlement to such relief, we reverse the order denying his petition and remand with directions for the trial court to issue an order to show cause under section 1170.95, subdivision (c).

## BACKGROUND

On October 31, 1996, shortly before Fox's 17th birthday, the People charged Fox with the murder of Richard Vargas, occurring on or about June 4, 1996. The People further alleged that the murder was committed while Fox and his confederate were engaged in the commission or attempted commission of a robbery within the meaning of section 190.2, subdivision (a)(17). The People charged Fox with attempted robbery occurring on the same day as the murder and with an additional robbery occurring in April 1996.

1. *Preliminary hearing*

The preliminary hearing was held October 17, 1996.
Maria Krauter, an employee of the San Gabriel Valley Credit Union (the credit union), testified that, on April 24, 1996,

---

[1] Undesignated statutory citations are to the Penal Code.

2

two men entered the credit union, and one jumped over a gate. The man who jumped over the gate pushed Krauter aside and took approximately $2,000 from her cash drawer. Luz Amador, another employee of the credit union, testified that Fox "probably" was one of the credit union robbers.

Detective Edward Pawasarat testified that he spoke to Fox, who admitted participating in the credit union robbery. Fox reported that his confederate carried a semi-automatic pistol. According to Pawasarat, Fox said that Fox's confederate pointed his gun at people inside the credit union and instructed Fox to jump over the counter and take the money. Fox jumped over the counter, retrieved money from a cash drawer, jumped back over the counter and started to walk out of the credit union. As Fox was exiting, the money Fox was holding exploded.

Sheriff's Deputy Joseph Martinez testified that he investigated a shooting in the course of a robbery at Lifestyle Pager, a retail pager store in Whitter. The victim died the night after the shooting. Employee Marla Garcia told Martinez that two men entered the store and one brandished a firearm and demanded money. The other jumped over the counter. Garcia heard gunshots and learned that Richard Vargas was shot. Two guns were used during the attempted robbery. One belonged to the victim.

Deputy Martinez testified that he spoke to Fox, who reported: "[A]long with two other individuals, [he] went into a pager store in Pico Rivera, and they went there to rob the store. He and one other individual got out of the car while the third remained in the car. The two of them walked into the pager store. He said that there were two people in the store, male and female, and one of them said something. At that point he [Fox]

3

jumped over the counter to see what he [could] steal.  [¶]  The male who was behind the counter grabbed him. There was a struggle.  He heard a gunshot.  He turned around and saw the male was armed with a gun and began wrestling with that individual.  Then he heard more gunshots.  At that point he broke away, jumped back over the counter, and left one of his tennis shoes behind.  He and his companion left the store."  Fox told Deputy Martinez that his confederate, Jeffery Rosas, was armed with a .25 caliber pistol.

## 2.     *Fox's plea and sentence*

Fox entered an open plea for which he was offered no promises.  (*People v. Cuevas* (2008) 44 Cal.4th 374, 381, fn. 4.)  Fox pleaded guilty to murder with the special circumstance that the murder was committed while Fox was engaged in the attempted commission of a robbery.  (§ 190.2, subd. (a)(17).)  Fox admitted he "and Jeff Rosa[s] entered with the intent to commit robbery and did start to commit a robbery and Mr. Vargas died in the course and commission of that attempt."  Fox agreed with the prosecutor's following description:  "You and Rosa[s] entered together with the intention to commit robbery.  He [Rosas] had a gun; you jumped over the counter and a gun fight erupted and Mr. Vargas died."  The prosecutor continued:  "So that . . . would be more than enough to be able to prove the special circumstance[ ], even though you may not have intended to injure or kill anybody; do you understand the allegation?"  Fox answered affirmatively.

In response to the prosecutor's questions, Fox indicated he understood that the special circumstance did not require he harbor the intent to kill and did not require that he was "the man

4

with the gun . . . ." Fox also pleaded guilty to attempted robbery.[2]

In the course of the plea, Fox answered the following question posed by the prosecutor affirmatively: "[O]ne of the reasons that you are pleading guilty, is there's a hope on your part that a judge will even give you more consideration to strike the special circumstance."

In contrast to his statement to defendant at the plea hearing, at sentencing, the prosecutor argued that the court lacked discretion to strike a special circumstance. Notwithstanding the prosecutor's argument, the sentencing court struck the special circumstance allegation. The sentencing court stated that it was "satisfied" Fox was not the shooter and was "strik[ing] the special circumstance allegation, therefore, making this a first-degree murder." The sentencing court sentenced Fox to an indeterminate term of 25 years to life for murder. The sentencing court stayed the sentence on the attempted robbery and sentenced Fox to five years on the April 1996 robbery. In its nonpublished opinion following the judgment, this court stated: "At sentencing, the [sentencing] . . . court granted Fox's motion to strike the special circumstance allegation and sentenced Fox to state prison for a term of 30 years to life."[3] (*People v. Fox* (Oct. 22, 1998, B117937) [nonpub. opn.] (*Fox I*).)

_____

[2] It appears the day before, Fox had pleaded guilty to the robbery alleged in the information, but a transcript of that plea is not in our record. In any event, the felony murder special circumstance was based on the murder occurring during the attempted robbery.

[3] In a footnote, respondent states that the trial court lacked discretion to strike the special circumstance despite the

5

### 3.    *Section 1170.95 petition*

On March 6, 2019, Fox filed a petition for resentencing pursuant to section 1170.95.  Fox alleged that he pleaded guilty to murder in lieu of going to trial because he believed he could have been convicted of murder based on the felony murder rule. He alleged that he could not now be convicted of murder because of changes to section 189.  Fox alleged that he was not the actual killer, did not harbor intent to kill, and either was not a major participant in the felony or did not act with reckless indifference to human life during the felony.

### 4.    *The trial court denies the petition*

Relying on the fact that Fox pleaded guilty to the felony murder special circumstance, the trial court found Fox ineligible for resentencing.  The trial court cited *People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted October 14, 2020, S264284, in which this court held that a felony murder special circumstance finding rendered a defendant ineligible for resentencing under section 1170.95.  (*Galvan*, at p. 1137.)  Fox timely appealed.

---

prosecution's representation to the contrary when the prosecutor took defendant's plea.  Respondent also fails to acknowledge that the reason Fox pleaded guilty was his "hope" that the judge would strike the special circumstance.  Respondent did not challenge the trial court's decision to strike the special circumstance either in the trial court or on appeal from the judgment of conviction and cites no authority supporting the proposition that it can do so over two decades later by means of a footnote.

# DISCUSSION

## A.     Background on Section 1170.95

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) amended section 188 to provide that "[e]xcept as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2.)  The amendment effectively "eliminates natural and probable consequences liability for first and second degree murder." (*People v. Gentile* (2020) 10 Cal.5th 830, 849 (*Gentile*).)  In addition, Senate Bill No. 1437 enacted section 189, subdivision (e), which restricted felony murder liability to cases in which the defendant was the actual killer, acted with the intent to kill, or was a major participant in the underlying felony and acted with reckless indifference to human life.  (Stats. 2018, ch. 1015, § 3; see *Gentile*, at pp. 842–843.)

A person convicted of murder under a felony murder or natural and probable consequence theory may petition to have the murder conviction vacated.  (§ 1170.95, subd. (a).)  The petitioner's prima facie case consists of the following three elements:

"(1)  A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.

"(2)  The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.

"(3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

At the prima facie stage, the trial court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 971–972.) The trial court however, may reject facts if the record of conviction " ' "contain[s] facts refuting the allegations made in the petition[.]" . . . ' [Citation.]" (*Id*. at p. 971.)

"If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).) In that event, the court must hold a hearing within 60 days to determine whether to vacate the murder conviction. (*Id*., subd. (d)(1).) At this third and final stage of the proceeding, the prosecution has the burden of proving "beyond a reasonable doubt[ ] that the petitioner is ineligible for resentencing." (*Id*., subd. (d)(3).)

## B. Fox Established a Prima Facie Case for Resentencing

Only the third prerequisite for a prima facie case is disputed. Fox argues that because the murder special circumstance finding preceded *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), he remains eligible for resentencing. Respondent argues that Fox is ineligible as a matter of law because he admitted the felony murder special circumstance.

In *Banks* and *Clark*, our Supreme Court clarified the definitions of major participant and reckless indifference to human life. (*In re Scoggins* (2020) 9 Cal.5th 667, 676.) There is a split of authority whether a pre-*Banks* and *Clark* special

8

circumstance finding renders a defendant ineligible for relief under section 1170.95.  This court has held three times that a defendant with a pre-*Banks/Clark* felony-murder special circumstance finding is not eligible for resentencing under section 1170.95.  (*People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted Oct. 14, 2020, S264284; *People v. Murillo* (2020) 54 Cal.App.5th 160, review granted Nov. 18, 2020, S264978; *People v. Allison* (2020) 55 Cal.App.5th 449.)[4]

The parties' focus on the split of authority whether a pre-*Banks*-and-*Clark* special circumstance finding renders a petitioner ineligible for resentencing relief is misplaced.  Although Fox pleaded guilty to a special circumstance, the trial

---

[4] Opinions reaching the same conclusion include *People v. Nunez* (2020) 57 Cal.App.5th 78, 83, review granted January 13, 2021, S265918; *People v. Gomez* (2020) 52 Cal.App.5th 1, 17, review granted October 14, 2020, S264033; *People v. Jones* (2020) 56 Cal.App.5th 474, 484–485, review granted January 27, 2021, S265854; and *People v. Simmons* (2021) 65 Cal.App.5th 739, 749–750, review granted September 1, 2021, S270048.  Other courts have disagreed.  (See *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179–1180, review granted June 24, 2020, S262011; *People v. Smith* (2020) 49 Cal.App.5th 85, 93–96, review granted July 22, 2020, S262835; *People v. York* (2020) 54 Cal.App.5th 250, 260–262, review granted Nov. 18, 2020, S264954; *People v. Harris* (2021) 60 Cal.App.5th 939, 956–959, review granted, Apr. 28, 2021, S267802; *People v. Secrease* (2021) 63 Cal.App.5th 231, 256, 262, review granted June 30, 2021, S268862; *People v. Pineda* (2021) 66 Cal.App.5th 792, 801–802, review granted Sept. 29, 2021, S270513; *People v. Gonzalez* (2021) 65 Cal.App.5th 420, 431, review granted Aug. 18, 2021, S269792; and *People v. Arias* (2021) 66 Cal.App.5th 987, 1005–1006, review granted Sept. 29, 2021, S270555.)

court subsequently struck the special circumstance allegation and this court noted that the sentencing "court granted Fox's motion to strike the special circumstance allegation . . . ." (*Fox I*, *supra*, B117937.) The trial court thus erred in relying on a plea to an allegation subsequently stricken by the sentencing court. (*People v. Barboza* (2021) 68 Cal.App.5th 955 (*Barboza*).)

In *Barboza*, the appellate court considered whether a trial court's decision to reduce a jury verdict from first degree murder to second degree murder and strike a special circumstance rendered the jury's findings a nullity. (*Supra*, 68 CalApp.5th at pp. 963–965.) The court concluded, "Reducing the degree of a crime and striking a special circumstance means that in the eyes of the law, the original findings never existed. Once a jury's finding is stricken, it is stricken." (*Id*. at p. 965.)

*Barboza* relied on the following authority: "In *People v. Park* (2013) 56 Cal.4th 782 [156 Cal.Rptr.3d 307, 299 P.3d 1263], the trial court held that a felony, after it was properly reduced to a misdemeanor under section 17, subdivision (b), did not qualify as a 'prior serious felony' for purposes of imposing a five-year sentence enhancement under section 667, subdivision (a), even when the defendant had initially pleaded guilty to the felony. [Citation.] '[G]iven that it was well established at the time section 667(a) was enacted that when a trial court reduced a wobbler to a misdemeanor under section 17(b) the offense was not thereafter to be considered a felony conviction for purposes of a recidivist statute, and given the absence of any indication in section 667(a) of an intention to depart from this general rule, we conclude that when a wobbler has been reduced to a misdemeanor the prior conviction does not constitute a prior felony conviction within the meaning of section 667(a).'

10

[Citation.] Thus, the court found it was improper to revive a felony reduced to a misdemeanor for the purpose of imposing a harsher sentence on a defendant in the future." (*Barboza, supra,* 68 Cal.App.5th at pp. 964–965.) "Also in the context of sentencing enhancements, in *People v. Flores* (2021) 63 Cal.App.5th 368, 383 [277 Cal.Rptr.3d 698], the appellate court held it was error for the trial court to use an enhancement stricken under section 1385 to calculate a defendant's minimum indeterminate sentence." (*Barboza,* at p. 965.)

The same principles apply to this case even though it involved striking a special circumstance allegation that was part of a plea rather than striking a jury finding. The special circumstance no longer existed because the sentencing court struck the special circumstance allegation. The trial court therefore erred in relying on Fox's plea of guilty to the felony murder special circumstance to conclude that he was ineligible for resentencing under section 1170.95.

## C. Respondent Does Not Show Ineligibility as a Matter of Law

Respondent argues that "[i]n cases where the petitioner was convicted of special circumstance felony murder, the facts are settled, and the only question is whether the record shows as a matter of law that his crime satisfies the *Banks* and *Clark* factors." Respondent further argues that "[b]ased on the record of conviction appellant's actions did indeed meet the *Banks* and *Clark* standard, rendering him ineligible for section 1170.95 relief as a matter of law."[5]

---

[5] *Banks* enumerated the following factors as relevant, but not dispositive, to determine whether a defendant was a major

Respondent's arguments are not persuasive. First, the trial court struck the special circumstance allegation. As a result, this case does not involve the determination of whether a pre-*Banks* and *Clark* special circumstance satisfies the new standard.

Second the "facts" underlying Fox's plea do not show as a matter of law that Fox acted as a major participant with reckless indifference to human life. Fox admitted only that he entered the pager store with the intention to commit a robbery, his confederate had a gun, Fox "jumped over the counter and a gun fight erupted and Mr. Vargas died." A defendant's knowledge that he was participating in an armed robbery does not show the defendant "knew his own actions would involve a grave risk of

_____

participant in a felony: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks, supra,* 61 Cal.4th at p. 803, fn. omitted.) *Clarks*' nonexhaustive list of factors to consider to determine if a defendant acted with reckless indifference to human life include: "knowledge of weapons, and use and number of weapons"; "physical presence at the crime and opportunities to restrain the crime and/or aid the victim"; "duration of the felony; "defendant's knowledge of cohort's likelihood of killing"; defendant's efforts to minimize the risks of the violence during the felony." (*Clark, supra,* 63 Cal.4th at pp. 618–623, capitalization & italics omitted.)

12

death." (*Banks*, *supra*, 61 Cal.4th at p. 807.) The fact that a "robbery involves a gun," standing alone "is not sufficient to support a finding of reckless indifference to human life for the felony-murder aider and abettor special circumstance." (*Clark*, *supra*, 63 Cal.4th at p. 617.)

Third, respondent relies primarily on evidence that was not found true by a trier of fact beyond a reasonable doubt. For example, respondent's reliance on testimony from the preliminary hearing is misplaced. "Being held to answer on an allegation does not constitute a factual finding that the allegation is true (and the allegation itself does not establish its own truth). Being held to answer does not even constitute a determination that the allegation is supported by substantial evidence." (*People v. Eynon* (2021) 68 Cal.App.5th 967, 969–970.) For all of these reasons, we reject respondent's argument that this court may uphold the denial of Fox's resentencing order on the ground that Fox as a matter of law acted as a major participant with reckless indifference to human life.

## DISPOSITION

The order denying Fox's Penal Code section 1170.95 petition is reversed.  The case is remanded for the trial court to issue an order to show cause pursuant to section 1170.95, subdivision (c).

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CRANDALL, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.